Harter L. LEATHERMAN, Jr., Defendant-Appellant,

v.

MANAGEMENT ADVISERS, INC., Plaintiffs-Appellees.

No. 4–1081A155.

Court of Appeals of Indiana, Fourth District.

June 14, 1982.

Marvin E. Coffey, Johnson Siegel & Coffey, Indianapolis, for defendant-appellant.

James W. Riley, Jr., Mark B. Hillis, Callahan, Riley & Hillis, Indianapolis, for plaintiffs-appellees.

YOUNG, Judge.

Defendant-appellant Harter L. Leatherman, Jr. appeals from the trial court's issuance of a preliminary injunction against him. The injunction prohibited Leatherman from conducting any business with any clients of plaintiff-appellee Management Advisers, Inc. (MAI) for a period of three years from April 15, 1981.

Leatherman is an insurance agent and pension consultant. MAI is in the business of selling and administering various kinds of insurance programs. In 1976, Leatherman became acquainted with William Garrity who is president of MAI. Thereafter, Leatherman became an independent consultant to an affiliate of MAI. After negotiating with Garrity for some months, Leatherman became an employee of MAI in August of 1978.[1] The first "Employment Contract Non-Piracy Agreement"[2] was signed by Leatherman on August 18, 1978, after he began his employment with MAI. Simultaneously with the execution of this agreement, MAI purchased from Leatherman an insurance account for $12,000. On July 23, 1979, Leatherman signed a second Employment Contract Non-Piracy Agreement,[3] which replaced the earlier contract. At approximately the same time, MAI purchased two more insurance accounts from Leatherman for $3840. Through 1980 and 1981 both Leatherman and MAI became increasingly dissatisfied with the employment relationship and Leatherman terminated his employment in April of 1981. After his resignation, Leatherman solicited several clients of MAI in contravention of the non-piracy agreement. MAI filed this suit seeking, *inter alia*, to enjoin Leatherman from soliciting MAI's clients. The trial court granted a preliminary injunction and Leatherman initiated this appeal.

**1.** The exact date of Leatherman's employment, either August 1, 1978 or August 11, 1978, is in dispute. However, the exact date is not important for the resolution of this appeal.

**2.** The "non-piracy" provisions of the agreement were as follows:

(5) In the event this agreement is terminated by the Employer, Employee hereby covenants and agrees with the Employer that he will not for a period of three (3) years from the date of such discharge, transact any business with any (individual) persons and/or (corporate-commercial) accounts and/or Association and its member accounts doing business with the Employer at the time of such termination without first obtaining the written consent of Employer. Excluded from this paragraph and also paragraph 6 hereunder are any contracts of insurance generated by Leatherman prior to August 15, 1978 and the persons, entities or corporations who had purchased same.

(6) In the event of the voluntary termination of employment of the Employee, Employee hereby covenants and agrees with the Employer, that he will not for a period of three (3) years from the date of such termination, transact any business with any (individual) persons and/or (corporate-commercial) accounts and/or Association and its member accounts doing business with the Employer at the time of such termination without first obtaining the written consent of Employer. See paragraph 5 hereinabove for exclusions.

**3.** The first and second agreements are identical except that the exclusions in the last sentence of paragraphs 5 and 6 of the first agreement were deleted from the second agreement.

The only issue before us on this interlocutory appeal is whether the trial court erred in granting MAI's motion for a preliminary injunction. In *Indiana State Department of Welfare v. Stagner*, (1980) Ind.App., 410 N.E.2d 1348, 1353, this court said:

> Discretion to grant or deny preliminary injunctive relief is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; (4) whether, by the grant of the preliminary injunction, the public interest would be disserved.

Leatherman challenges only the trial court's finding that MAI had demonstrated a reasonable likelihood of success at trial.[4] He contends that there is no consideration to support the second non-piracy agreement. Consequently, he argues, there is no enforceable contract and MAI could not prevail at trial.

■ Consideration is an essential element of every contract. *Puetz v. Cozmas*, (1958) 237 Ind. 500, 147 N.E.2d 227. Thus, Leatherman's promise to not compete with MAI must have been supported by adequate consideration to be enforceable. MAI contends, however, that there was adequate consideration to support the second non-piracy agreement. MAI first argues that consideration was provided by the contemporaneous purchase of two insurance accounts from Leatherman. At about the same time that the second non-piracy agreement was executed, Leatherman sold to MAI two insurance accounts.[5] MAI contends that the two contracts should be read

together. If the two contracts are read together the benefit received by Leatherman was $3840 and the benefits received by MAI were (1) the two insurance accounts and (2) the deletion of the exclusions from the non-piracy agreement. Thus, MAI concludes, there was adequate consideration.

■ The consideration for one instrument may be found in a contemporaneous instrument. *Torres v. Meyer Paving Co.*, (1981) Ind.App., 423 N.E.2d 692. However, contemporaneously executed contracts are construed together only when they relate to the same transaction or subject matter. *See Baker v. Gordon*, (1960) 130 Ind.App. 585, 164 N.E.2d 118. In this case, the two contracts did not relate to the same transaction or subject matter. One contract dealt with Leatherman's employment, which had been ongoing for some time. The other contract dealt with the sale of insurance accounts. This case is unlike *McGann & Marsh Co. v. K & F Manufacturing Co.*, (1979) Ind.App., 385 N.E.2d 1183, cited by MAI. In *McGann & Marsh* the two separate contracts were part of a package transaction. The attorney involved used two separate agreements because of his concern with tax consequences. In the present case, there was no such concern. Two documents were used because these were two separate and unrelated agreements. The purchase of two insurance accounts by MAI does not constitute adequate consideration to support the non-piracy covenants.

■ MAI also contends that Leatherman's continued employment served as adequate consideration to support the non-piracy covenants. Whether continued employment is adequate consideration to support a covenant not to compete was specifically left undecided by this court in *Advanced Copy Products, Inc. v. Cool*, (1977) 173 Ind. App. 363, 363 N.E.2d 1070, and has not been subsequently decided by any Indiana case.

---

4. We note that the trial court's findings of fact were not very specific. *See* Ind.Rules of Procedure, Trial Rule 65(D). This lack of specificity is not assigned as error and because we resolve the appeal on other grounds, we need not decide whether it was in fact error.

5. The record is unclear as to the exact date that the two insurance contracts were sold to MAI. However, the exact date is not important for the resolution of this appeal.

Contrary to MAI's contention, *Buanno v. Weinraub*, (1948) 226 Ind. 557, 81 N.E.2d 600, is not controlling. In that case, Buanno had been employed by the Weinraubs for several years under an oral agreement. In order to keep the business operating while they were in the armed forces, the Weinraubs entered into a written contract with Buanno. In the written contract Buanno was given additional responsibilities and a rather large increase in salary. Buanno also covenanted not to compete with the Weinraubs' business. After Buanno left the service of the Weinraubs, he started a competing business. The Weinraubs sought an injunction which was granted by the trial court. In affirming the trial court, the Indiana Supreme Court stated that the covenant not to compete was ancillary to both the oral agreement and the written agreement and was supported by adequate consideration. The court recognized that once the Weinraubs returned Buanno would give up his supervisory duties (and salary) and return to his former position. By stating that the covenant was ancillary to the oral agreement, the court was merely stating that the covenant would still bind Buanno after he returned to his former position. The consideration for the covenant was Buanno's increase in salary, not his continued employment. Thus, *Buanno* is not controlling.

The courts of other jurisdictions which have considered whether continued employment is adequate consideration to support a covenant not to compete have split on the result. *Compare George W. Kistler, Inc. v. O'Brien*, (1975) 464 Pa. 475, 347 A.2d 311 with *Farm Bureau Service Co. v. Kohls*, (Iowa 1972) 203 N.W.2d 209. *See generally* Annot., 51 A.L.R.3d 825 (1973). The view that continued employment is adequate consideration to support a noncompetition covenant is very narrowly the majority position. The more recent cases, however, are somewhat more likely to find that continued employment is not adequate consideration.

We agree with those cases that hold that continued employment is not sufficient consideration to support a covenant not to compete. When an employee agrees to a covenant not to compete in exchange for continued employment he gains nothing that he did not already have and the employer is under no additional obligation. Continued employment for an indefinite period at the employer's discretion is illusory consideration. An employee could agree to the covenant one day and be fired the next day. The opportunity for coercion is too great. Thus, we hold that the second non-piracy agreement is void for lack of consideration and not binding on Leatherman. The trial court erred in finding that MAI had demonstrated a likelihood of success at trial by establishing a prima facie case. Therefore, the issuance of an injunction was improper.

The judgment is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

MILLER, P. J., and SHIELDS, J. (sitting by designation), concur.